UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHAEL JEFFRIES,<br><br>                             Plaintiff,<br><br>         v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; SHERIFF DOUGLAS GILLESPIE; DOE DEPUTY SHERIFFS,<br><br>                             Defendants. | Case No. 2:14-cv-01862-KJD-CWH<br><br>ORDER |

Presently before the Court is Defendants' Motion for Summary Judgment (#30). Plaintiff filed an opposition (#33) and a supplemental opposition (#35).

**I. Background**

The underlying facts of this case are largely undisputed. This action stems from an incident at Plaintiff's home on June 1, 2013. At the time of the incident, Plaintiff was a probationary police officer for the Las Vegas Metropolitan Police Department (LVMPD). In the early morning of June 1, 2013, Plaintiff's step-son, Jordan Kauffer, dialed 9-1-1 to report that his mother was "going crazy" and had grabbed his neck. (#30 at 3). Officers responded to the call and attempted to contact the residents of the home at the front door and with their bull horn. After being unable to contact the occupants, the officers found an unlocked back door and gained entry to the home.

Once inside the home, officers again attempted to contact the residents, including Plaintiff. Plaintiff refused to present himself to officers and shouted at the officers to "come back here and get me." (#35 at 2). As a result of Plaintiff's verbal challenge, the officers understood the incident to be a hostage and barricade situation and dispatched a SWAT team. Once on scene, SWAT officers attempted to contact Plaintiff multiple times by phone and text message, but to no avail. Eventually, Plaintiff's wife and step-son exited the home. At that point, officers determined the threat to be neutralized and left.

Shortly after the incident at his home, Defendant LVMPD extended Plaintiff's probationary status and informed him he was under criminal investigation stemming from his role in the June 1 incident. Plaintiff attended a confirmation hearing in October, 2013, accompanied by a PPA representative. (#30 Ex. A at 1). Following the hearing, Defendants declined to confirm Plaintiff and terminated his employment. Plaintiff then brought this action under 42 U.S.C. § 1983 claiming Defendants deprived him of his Fourth, Fifth, and Fourteenth Amendment rights when they extended his probation and terminated his employment. Defendants now petition the Court for summary judgment.

**II. Legal Standard**

**A. Summary Judgment**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment may be granted if the pleadings, depositions, affidavits, and other materials of the record show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Uncorroborated and self-serving testimony, without more, will not create a genuine issue of material fact. See Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Conclusory or speculative testimony is also insufficient to raise a genuine issue of fact. Anheuser Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. Once that burden is met, the nonmoving party then has the burden of setting forth specific facts demonstrating that a genuine issue exists. See Matsushita, 475 U.S. at 587; Fed. R. Civ. P. 56(e). Mere "metaphysical doubt as to the material facts" is not enough. Matsushita, 475 U.S. at 586. If the nonmoving party fails to make a sufficient showing of an essential element for which it bears the burden of proof, the moving party is entitled to summary judgment. See Celotex, 477 U.S. at 322-23.

**III. Analysis**

**A. Plaintiff's § 1983 Claim**

Defendants petition the Court for summary judgment on Plaintiff's § 1983 claim. Section 1983 imposes civil liability upon a person who, acting under color of state law deprives another of a federally protected right. 42 U.S.C. § 1983. In addition to imposing liability on individuals, § 1983 extends liability to government and municipal agencies that cause employees' rights to be violated. Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 692 (1978). The parties agree that the officers' initial entrance into Plaintiff's residence did not violate Plaintiff's constitutional rights. (# 33 at 15). Therefore, the Court must determine whether Plaintiff has raised a genuine issue of material fact as to whether the Defendants' subsequent

actions deprived him of a constitutional right, and whether Plaintiff has asserted a prima facie §1983 claim.

To survive Defendants' motion for summary judgment, Plaintiff must raise a genuine issue of material fact on two elements: (1) that Defendant acted under color of state law, and (2) that Defendant deprived Plaintiff of his civil rights. See Borunda v. Richmond, 885 F.2d 1384, 1391 (9th Cir. 1989) (citing Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 624 (9th Cir. 1988)). The parties do not dispute Defendant acted under color of state law. The question for the Court then, is whether there is a genuine issue of material fact that the subsequent discipline deprived Plaintiff of a constitutional right. The Court will assess each of Plaintiff's claims in turn.

### a. Plaintiff's Fifth Amendment Claim

Defendants argue Plaintiff's Fifth Amendment claim must fail as a matter of law because Plaintiff presents no evidence that he was compelled to give an incriminating statement. The Fifth Amendment states, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amdt. IV. There is no dispute between the parties that Plaintiff was under criminal investigation resulting from the June 1 incident.

However, Plaintiff provides no evidence that Defendants deprived him of his right to refuse to give a statement. During the initial incident, Plaintiff did not give any statement to police. In the subsequent criminal investigation, Plaintiff was represented by a PPA representative and was not compelled to give a statement. (#30 Ex. A at 1). Plaintiff's own statements demonstrate that he was not deprived of his Fifth Amendment rights at any point of the process. Thus, Plaintiff has not submitted a present a prima facie § 1983 claim. Therefore, the Court finds there is no genuine issue of material fact preventing the Court from granting

summary judgment and dismissing Plaintiff's Fifth Amendment claim.

### b. Plaintiff's Fourth Amendment Claim

Defendants argue the officers did not deprive Plaintiff of his Fourth Amendment rights during the June 1 incident or in the subsequent investigation. In relevant part, the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. Warrantless entry of one's home is the "chief evil" against which the Fourth Amendment protects. Payton v. New York, 445 U.S. 573, 585 (1980). Accordingly, warrantless searches and seizures are presumptively unreasonable under the Fourth Amendment. Payton, 445 U.S. at 586.

However, the Fourth Amendment is subject to narrow exceptions. Indeed, "the need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." Mincey v. Arizona, 437 U.S. 385, 393 (1978) (quoting Wayne v. United States, 318 F.2d 205, 212 (D.C. 1963)). One such exception applies to officers who, in efforts to prevent injury, conduct a warrantless entry. Brigham City v. Stuart, 547 U.S. 398, 404 (2006). To pass constitutional muster, the officers must have an "individualized and articulated suspicion" to conduct the warrantless search. Jackson v. Gates, 975 F.2d 648, 651 (9th Cir. 1992).

Here, officers responded to a distressed 9-1-1 call that detailed a domestic violence incident in progress. The officers were within their rights to enter the home without a warrant to ensure the occupants' safety. Once inside the home, it is unclear whether Plaintiff actually exercised his rights when the officers were present.[1] However, regardless of Plaintiff's level of intoxication, the Court agrees that Defendants did not deprive Plaintiff of his Fourth Amendment

---

[1] Plaintiff simultaneously claims he asserted his rights and was too inebriated for any independent recollections of the evening. (#33 at 2-3).

5

rights during the initial incident.

However, Plaintiff argues his subsequent discipline and termination was based entirely upon his decision to exercise his Fourth Amendment rights; a right, which according to Plaintiff's own statements, he may have been too inebriated to consciously assert.  In response, Defendants submit the LVMPD civil service rules detailing non-confirmation of appointment, which states:

> If, during an initial probationary period, an employee's performance or conduct is not satisfactory, or if he proves to be unsuited to his work or if he fails to qualify medically, the appointment shall not be confirmed.

(#30 Ex. E).  Defendants argue that Plaintiff's conduct rendered him unsuited for work as a police officer pursuant to the LVMPD civil service rules.  (#30 Ex. E).  Plaintiff's poor decision making resulted in the expenditure of LVMPD time and resources, disruption to Plaintiff's community, and brought public discredit upon the police department.  (#30, Ex. A). These factors demonstrate that Plaintiff's discipline and subsequent termination was not in retaliation to his assertion of constitutionally protected rights, but in response to Plaintiff's violation of the department's civil service standards.

Plaintiff argues that Defendants retaliated against him for exercising his civil rights. However, Plaintiff does not provide more than conclusory and speculative testimony in an attempt to demonstrate a genuine issue of material fact.  Therefore, the Court finds Plaintiff has failed to raise a question of material fact about whether Defendants deprived him of his Fourth Amendment right or retaliated against him for asserting that right.

### c.  Plaintiff's Fourteenth Amendment Claim

Plaintiff argues the extension of his probation violated his right to due process under the Fourteenth Amendment because Defendants' motivation was to deprive Plaintiff of his

6

Constitutional rights. However, the Court has already determined that Defendants' actions were not retaliatory, but were in response to Plaintiff's violation of the LVMPD civil service standards. Therefore, the Court grants Defendants' motion for summary judgment on Plaintiff's Fourteenth Amendment claim.

### B. Doe Pleadings

In his initial complaint, filed in the Eighth Judicial District Court of Nevada, Plaintiff included unknown Doe defendants. In federal court, however, Doe defendants are not permitted. Graig v. U.S., 413 F.2d 854, 856 (9th Cir. 1969); Wiltsie v. Cal. Dept. of Corrections, 406 F.2d 515, 518 (9th Cir. 1968); Tolefree v. Ritz, 382 F.2d 56, 567 (9th Cir. 1967). Plaintiff does not address this in his response. Therefore, the Court grants Defendant's motion for summary judgment on all claims against unnamed defendants in accordance with LR 7.2(d).

### C. Plaintiff's Monell Claim

Defendants argue Monell liability cannot attach in this case because they did not act pursuant to a policy, scheme, or practice in its decision to terminate Plaintiff. Additionally, Defendants argue that even if there was a policy, scheme, or practice, it did not result in a deprivation of Plaintiff's constitutional rights. Municipalities and local government entities can be sued directly under § 1983, and courts may impose monetary, injunctive, and declaratory relief. Monell v. Dep't of Social Services, 436 U.S. 658, 690 (1978). To prevail on a Monell claim, Plaintiff must show an official policy is responsible for the deprivation of his constitutional rights. Id. The requirement that the municipality's decision be based on an official policy was intended to separate the actions of municipality from the actions of the employees of the municipality. Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986). Indeed, a municipality may be liable under Monell based on the "single decision by municipal

policymakers . . . whose acts or edicts may fairly be said to represent official policy." Id. at 480.

Plaintiff argues Sheriff Gillespie's ratification of Plaintiff's termination both deprived Plaintiff of his civil rights and constituted an official policy under Pembaur and Monell. However, the Court has already found that Plaintiff failed to raise a genuine issue of material fact demonstrating that he was deprived of a constitutional right or was retaliated against for asserting a constitutional right. Thus, the question of Sheriff Gillespie acted as an official decision maker in this case is moot. Therefore, the Court grants Defendants' motion for summary judgment on Plaintiff's Monell claim.

## IV. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (#30) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk of the Court enter **JUDGMENT** for Defendants and against Plaintiff.

DATED this 4th day of August 2016.

_____
Kent J. Dawson
United States District Judge

8